IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br>v.<br><br>**MICHAEL FRONK,**<br><br>      Defendant. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No. 2:13CR484 DAK |

   This matter is before the court on Defendant Michael Fronk's appeal from a misdemeanor conviction for violating 41 C.F.R. §102-74.405, a regulation that pertains to the use of alcoholic beverages on federal property. Mr. Fronk has appealed his conviction, arguing that (1) the Magistrate Judge erred in finding that the regulation prohibits entry into federal property with any alcohol in the body; and (2) under the correct legal standard, the government did not produce sufficient evidence to convict Mr. Fronk of "using" alcoholic beverages or being "under the influence" of alcoholic beverages on federal property.

   Oral argument on the appeal was held on April 23, 2014. At the hearing, the United States (the "Government") was represented by Scott B. Romney, Cherise M. Bacalski, and Jorge Gavilanes.[1] Mr. Fronk was represented by Audrey K. James. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking

---

[1] Cherise Bacalski and Jorge Gavilanes are third-year law students, appearing under the Student Practice Rule. *See* DUCivR 83-1.6

the matter under advisement, the court has further considered the law and facts relating to this appeal. Now being fully advised, the court renders the following Memorandum Decision and Order, reversing the Judgment of conviction entered on July 2, 2013.

## I. FACTUAL BACKGROUND

### A. Factual History

Mr. Fronk is an employee of the Internal Revenue Service ("I.R.S.") in Ogden, Utah. He works in the I.R.S. building, which is property owned by the United States General Services Administration ("GSA"). In June 2012, Agent Pamela Combe ("Agent Combe") of the Treasury Inspector General for the Tax Administration (T.I.G.T.A.) received a complaint that Mr. Fronk had been drinking alcohol during work hours. Agent Combe subsequently interviewed Mr. Fronk, and, during that interview, Mr. Fronk admitted to consuming a beer that day on his break. He had consumed the beer in his truck on private property. During the interview, Agent Combe showed Mr. Fronk 41 C.F.R. §102-74.405 (the "Regulation") and "told him that there is a rule that outlines that you are not to be under the influence of alcohol on [federal] property and that he shouldn't continue that."[2] The Regulation reads as follows:

> Except where the head of the responsible agency or his or her designee has granted an exemption in writing for the appropriate official use of alcoholic beverages, ***all persons entering in or on Federal property are prohibited from being under the influence or using alcoholic beverages.*** The head of the responsible agency or his or her designee must provide a copy of all exemptions granted to the buildings (sic) manager and the highest ranking representative of the law enforcement organization, or other authorized officials, responsible for the security of the property.

---

[2] Transcript of Bench Trial at 29, Docket No. 19 in Case No. 1:13PO8 DBP.

41 C.F.R. §102-74.405 (emphasis added).

At some point between the June interview and October 23, 2012,[3] Agent Combe was following up on her investigation regarding the June 2012 incident with Mr. Fronk, and she went back to the convenience store where Mr. Fronk said he had purchased the beer. She sought to verify from the owner that Mr. Fronk had indeed purchased a beer there on the day she had interviewed him in June. While she was there, Agent Combe discovered from the store clerk that Mr. Fronk had been buying beer there since she interviewed him in June.[4]

On October 24, 2012, Agent Combe initiated an investigation of Mr. Fronk.[5] She drove to his home and watched him as he left for work at approximately 5:40 a.m. On his way to work, Mr. Fronk stopped at a Chevron. After he left the Chevron, Agent Combe went inside the Chevron to ask if Mr. Fronk had purchased a beer, but she was told that the Chevron did not sell beer before 6:00 a.m., so no beer was sold. Mr. Fronk continued on his way to work, parked in the IRS lot, and went inside. At approximately 6:30 a.m., he left work and drove to a nearby Phillips 66 gas station and convenience store. Agent Combe followed him and watched as Mr. Fronk sat in his vehicle for a brief time and then drove back to work. Agent Combe went inside the Phillips 66 to talk to the store clerk, who verified that Mr. Fronk had purchased a 24-ounce

---

[3] The record is unclear as to precisely when Agent Combe went to the convenience store to verify Mr. Fronk's purchase of a beer on the day of her June interview with him. *See id*. at 29-30.

[4] *Id*. at 30.

[5] *Id*. at 30. The facts regarding Agent Combe's October 24, 2012 investigation are taken from the Transcript of the Bench Trial at pp. 30-54.

can of beer.

At approximately 9:00 a.m., the time of Mr. Fronk's mid-morning break, Agent Combe observed Mr. Fronk drive to a nearby 7-11. After making a purchase, he drove to a shaded area under a tree for a short amount of time. As he drove back to the IRS parking lot, Agent Combe saw him throw something in a trash receptacle near the 7-11 gas pumps. She drove over to the trash receptacle, and, on the top of the trash, there was an empty beer can. Agent Combe also went inside the 7-11 to talk to the clerk, and she learned that Mr. Fronk had brought two cans of beer – one can was blue and one was gold.

Then, around 11:30 a.m.–Mr. Fronk's lunch break–Agent Combe observed Mr. Fronk again leave the building. He drove from the IRS parking area back to the shaded area where he had parked earlier. When he was finished, she watched him drive over to a gas pump and throw something in the trash. As before, Agent Combe observed him drive back to work and then she went to the trash receptacle and retrieved another empty can of beer. This can was gold.[6] Thus, Agent Combe's investigation led her to conclude that Mr. Fronk had consumed three 24-ounce beers that day, one at 6:30 a.m., one at 9:00 a.m. and one at 11:30 a.m. Later that day, Agent Combe interviewed Mr. Fronk, who admitted to consuming the beer. He also stated that he was an alcoholic but that he believed he nonetheless functioned well.[7]

There is no dispute that the three beers were consumed on private property and that they

---

[6] The trial testimony implies that the other can that she retrieved earlier was blue, as the convenience store clerk had described.

[7] *Id*. at 55.

were all "Utah beers," which contain 3.2% alcohol.[8]   There is no evidence that Mr. Fronk had poor balance or coordination; slurred speech; diminished clarity or control; or glassy, bloodshot eyes.  There is also no evidence that he was belligerent, rude, angry, creating a disturbance, behaving in a way to endanger himself or others, or acting out of control or impaired in any way.

**B.  Procedural History**

Mr. Fronk was charged by way of Petty Information on January 15, 2013, for "Prohibited Consumption and Influence of Alcoholic Beverages" on Federal Property on or about October 24, 2012, in violation of 41 C.F.R. §102-74.405.[9]   A bench trial was held on April 30, 2013, and, after supplemental briefing, the Magistrate Judge entered a Judgment of Conviction against Mr. Fronk on June 27, 2013.

During the trial, the Government argued that Mr. Fronk was guilty of violating the Regulation's prohibition against "using" alcohol on federal property because–even though he had consumed the alcohol on private property–he had nonetheless "used" the alcohol inside his body while entering in federal property.   The Government also argued that Mr. Fronk was "under the influence" of alcohol because he admitted to drinking the beers and, according to the Government, the Regulation does not require intoxication or any level of impairment.

Mr. Fronk argued, on the other hand, that the Regulation's prohibition against  "using"

---

[8] *See*, *e.g.*, *id*.  The court takes judicial notice of the fact that the beer sold in grocery and convenience stores cannot exceed 3.2% alcohol by weight.  Full-strength beer must be purchased from a Utah state liquor store.  *See* http://abc.utah.gov/laws/law_faqs.html.

[9] Docket No. 1, Case No. 1:13PO8 DBP

5

alcohol means to actually "consume" alcohol in or on federal property and that "under the influence" requires some showing of the effects of alcohol. Mr. Fronk pointed out that the limit in Utah to carry a gun or to drive a car is .08 blood alcohol concentration ("BAC") and that it does not make sense to have a more stringent standard (*i.e*, not a drop) to enter a federal facility. Under the interpretation of the Regulation urged by Mr. Fronk, he argued that the Government had failed to produced sufficient evidence to sustain a conviction.

After the Government rested its case during the bench trial, Mr. Fronk moved for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure ("FRCP"). The Magistrate Judge denied the motion. Defendant then rested without offering any additional evidence. Defendant again moved for acquittal on the grounds of insufficient evidence, or, alternatively, that the Regulation, as applied to him, was unconstitutionally void for vagueness.

After supplemental briefing, the Magistrate Judge denied both motions.[10] In an oral ruling on June 27, 2013, the Magistrate Judge held that the Regulation prohibits the "use" of alcohol inside the human body and therefore prohibits anyone who has consumed any amount of alcohol (even on private property) – no matter how slight – from subsequently entering federal property. The Magistrate Judge also held that the phrase "under the influence" of alcoholic beverages, as used in the Regulation, does not require any showing of impairment and that an individual is "under the influence" if he has any amount of alcohol inside his body. In other words, the Magistrate Judge found that the Regulation is a "not a drop" law, stating that "not a

---

[10] Docket Nos. 25, 26, Case No. 1:13PO8 DBP.

drop of alcohol is allowed on federal property regardless of where it was consumed or how the consumption exhibits itself."[11] Based on this interpretation of the Regulation, the Magistrate Judge found that the Government had established Mr. Fronk's guilt beyond a reasonable doubt.[12] The court further found that this regulation is not unconstitutionally void for vagueness as applied to Mr. Fronk.[13]

## II. DISCUSSION

**A.   Standard of Review**

In this appeal from the judgment entered by the magistrate judge, the "scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." FRCP 58(g)(2)(D). In an appeal from a bench trial, therefore, this court reviews a magistrate judge's factual findings for clear error and its legal conclusions de novo. *See*, *e.g*, *Roberts v. Printup*, 595 F.3d 1181, 1186 (10th Cir. 2010) (setting forth the Tenth Circuit's standard of review for a bench trial in district court). Thus, the court reviews the Magistrate Judge's regulatory interpretations *de novo*. *See United States v. Manning*, 526 F.3d 611, 614 (10th Cir. 2008). With respect to the sufficiency of the evidence, the court reviews *de novo* whether the government presented sufficient evidence to support Mr. Fronk's conviction. *United States v. Sells*, 477 F.3d 1226, 1235 (10th Cir. 2007). The court, however, must view the evidence in the

---

[11] Transcript of Court's Ruling and Sentencing at 7, Docket No. 8-2, Case No. 2:13CR1484 DAK.

[12] *Id*. at 18-20.

[13] *Id*. at 14-18.

light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Accordingly, the court must determine "whether a reasonable jury could find guilt beyond a reasonable doubt, based on the direct and circumstantial evidence, together with the reasonable inferences to be drawn therefrom." *Sells*, 477 F.3d at 1235 (quotations omitted).

**B.     Legal Background**

   *1. The Regulation*

   As set forth above, the Regulation at issue reads as follows:

   102-74.405—What is the policy concerning the use of alcoholic beverages?

   > Except where the head of the responsible agency or his or her designee has granted an exemption in writing for the appropriate official use of alcoholic beverages, ***all persons entering in or on Federal property are prohibited from being under the influence [of] or using alcoholic beverages.*** The head of the responsible agency or his or her designee must provide a copy of all exemptions granted to the building[']s manager and the highest ranking representative of the law enforcement organization, or other authorized officials, responsible for the security of the property.

41 C.F.R. §102-74.405 (emphasis & brackets added by court).[14] This regulation falls within Subpart C of Section 102-74, which governs Conduct on Federal Property.

   *2. Rules of Statutory Construction*

   The court interprets a federal regulation using the same principles of construction used to interpret statutes. *See Time Warner Entertainment Co., L.P. v. Everest Midwest Licensee* 381 F.3d 1039, 1050, 1053 (10th Cir. 2004). A court must interpret statutes, "to determine

---

[14] *See also* 40 U.S.C. § 486c (granting statutory authority to the Administrator of General Services to promulgate regulations necessary to implement the Federal Property and Administrative Services Act of 1949).

congressional intent, using traditional tools of statutory construction." *See Manning*, 526 F.3d at 614. First, the court examines the statute's plain language: "If the statutory language is clear, [the] analysis ordinarily ends." *Id*.; *see also Wright v. Federal Bur. of Prisons*, 451 F.3d 1231, 1234 (10th Cir. 2006); *United States v. Husted*, 545 F.3d 1240, 1245 (10th Cir. 2008). If the statute's language is ambiguous, the court looks to the public policy underlying the statute and to legislative history. *Manning*, 526 F.3d at 614 (10th Cir. 2008); *United States v. Hinkley*, 550 F.3d 926, 932 (10th Cir. 2008). When considering statutory language, the court must read "the words of the statute in their context and with a view to their place in the overall statutory scheme" and must "resist reading words or elements into a statute that do not appear on its face." *United States v. Sturm*, 673 F.3d 1274, 1279 (10th Cir. 2012). "The most fundamental guide to statutory construction is common sense." *Salt Lake City v. Western Area Power Admin*., 926 F.2d 974, 984 (10th Cir.1991) (citation omitted).

**C.    Analysis**

    *1.    Does the prohibition against "using" alcoholic beverages in or on federal property forbid the mere presence of alcohol inside the body while entering federal property?*

Mr. Fronk argues that the Magistrate Judge erred in interpreting the Regulation to prohibit the use of alcohol prior to entering federal property.[15] Mr. Fronk notes that much of the

---

[15] As stated above, the Magistrate Judge agreed with the Government that "using" alcoholic beverages while "entering in" federal property, refers not to the actual physical consumption of alcohol, but to the mere presence of alcohol inside the human body. The court noted that "the chemicals that come into contact with the body have continuing effect after one consumes them." Docket No. 8-2, at 5-6.

9

confusion regarding the Regulation in this case centers on the word "using" and whether the word "using" was intended to prohibit the mere presence of alcohol within the human body while entering federal property–or whether it refers to the act of physically "consuming" alcohol in or on federal property.

In analyzing the plain meaning of the Regulation, the court finds that the word "using" in the Regulation means to consume alcoholic beverage in or on federal property.  The relevant language is that "all persons entering in or on Federal property are prohibited from . . . using alcoholic beverages."  Such an interpretation is straightforward and unambiguous.

The Magistrate Judge, in agreeing with the Government's interpretation, has rearranged the Regulation's wording to be "all persons using alcoholic beverages are prohibited from entering in or on Federal property."  The drafters of the Regulation could have easily written the Regulation in that way if that is what they had meant.  Or they could have stated "no person with a measurable amount of alcohol in their bloodstream may enter or be present on federal property."  That the drafters did not do so is a factor to be considered.  *See Bailey v. United States*, 516 U.S. 137, 144 (1995) (noting that "[h]ad Congress intended firearm possession alone to trigger liability [for "using" a firearm] it easily could have so provided," but the fact that it did not do so implied that it had not, in fact, been Congress' intent).

Moreover, to interpret the word "using" to mean the "metabolizing of alcohol in the body" creates considerable ambiguity and uncertainty.  Who is the arbiter of whether a given individual is metabolizing alcohol?  How is an individual to know how much time must pass between having an alcoholic beverage and being able to lawfully cross the threshold into federal

property? Is there a legally material difference between (1) someone who drinks a 24-ounce, 3.2% beer on private property and then enters a federal building ten minutes later; (2) someone who drinks a glass of wine during a two-hour lunch at a restaurant and then enters a federal building; and (3) someone who drinks a few beers and several shots of tequila at a party after work and then enters a federal building the following morning? Presumably, the length of time it takes an individual to metabolize alcohol would depend on a multitude of factors, including how much he had to drink, the alcohol content of the drink(s), whether he had food in his stomach at the time; his height and weight, and there are undoubtedly other factors. Given the uncertainty that arises with such an interpretation, along with the ordinary meaning of the words "using alcohol" would not be "metabolizing alcohol," the court finds that common sense interpretation of the Regulation is that it does not prohibit anything other than consuming (i.e., "using") alcohol while in or on federal property.[16] There is no evidence that Mr. Fronk consumed alcohol while on or in federal property. Accordingly, the Government did not prove beyond a reasonable doubt that Mr. Fronk violated the Regulation by "using" alcohol.

2. *Does the prohibition against "being under the influence," as used in 41 C.F.R. §102-74.405, mean the mere presence of alcohol inside the body while entering federal property?*

Defendant argues that the Magistrate Judge erred in finding that "under the influence" of alcohol means the presence of any amount of alcohol within the body. The court must "read the

---

[16] Of course, there is an exception set forth in the Regulation: "Except where the head of the responsible agency or his or her designee has granted an exemption in writing for the appropriate official use of alcoholic beverages . . . ."

11

words of the statute in their context[.]" *See Wright,* 451 F.3d at 1234. The court considers "not only the bare meaning of the word but also its placement and purpose in the statutory scheme." *Bailey*, 516 U.S. at 145 (citing *Brown v. Gardner*, 513 U.S. 115, 118 (1994)). "'[T]he meaning of statutory language, plain or not, depends on context.'" *Id*.

The court agrees with Defendant that the phrase "under the influence [of alcohol]" has a commonly understood meaning that extends beyond the mere presence of the slightest amount of alcohol in the bloodstream; rather, it means some outward sign of impairment. The Tenth Circuit has acknowledged that "[t]he term 'under the influence [of alcohol]' is commonly understood to mean . . . a state of intoxication that lessens a person's normal ability for clarity and control." *United States v. Cope*, 676 F.3d 1219, 1227 (10th Cir. 2012) (citing *Government of Virgin Islands v. Steven*, 134 F.3d 526, 528 (3d Cir. 1998)); *see also* Black's Law Dictionary 1665 (9th ed. 2009) (defining "under the influence" as "deprived of clearness of mind and self-control because of drugs or alcohol"); *id.* at 898 (defining "intoxication" as "[a] diminished ability to act with full mental and physical capabilities because of alcohol or drug consumption").[17]

Moreover, the general public forms its ordinary, everyday understanding of the term "under the influence [of alcohol]" from statutes that do contain limits for blood alcohol levels.

---

[17] In *Cope*, the defendant was a copilot of a commercial flight. The court concluded that "the trial evidence was sufficient for a reasonable fact-finder to conclude that [the defendant's] ability for clarity ad control was lessened and that he was thus 'under the influence of alcohol.'" *Cope*, 676 F.3d at 1227. During the trial, there had been evidence that the captain had smelled alcohol on the defendant during the flight, and he had also noticed that the defendant's eyes were red and that he had a puffy face prior to the flight. *Id*. at 1221-23. There was also evidence about his breathalyzer test results which were taken almost three hours after the flight departed. which showed a BAC of .084. *Id.* at 1223-25. No such evidence exists in the instant case.

For example, the regulation in *Cope* that governs the operation of "common carriers" such as trains, buses, and airplanes contains a statutory presumption that a person with a .10 BAC is "under the influence of alcohol." *Cope*, 676 F.3d 1219, 1221 (10th Cir. 2012). The standard for being "under the influence" of alcohol for purposes of both operating a motor vehicle and carrying a firearm under Utah law is .08 BAC. Utah Code Ann. §41-6a-502(1)(a), Utah Code Ann. § 76-10-528.

The court agrees with Defendant that it makes no sense to impose a less-forgiving blood-alcohol standard for entering in a federal building than to fly an airplane, drive a car, or carry a gun. There is no language in the Regulation that would alert a person of ordinary intelligence that the phrase "under the influence [of alcoholic beverages]" as used in this Regulation imposes a heightened standard from the "common everyday" standard with which they are familiar.

There was no evidence offered by the Government that Mr. Fronk was "under the influence" of alcohol when he entered the IRS building on October 24, 2012. There was no evidence that Mr. Fronk had poor balance or coordination; slurred speech; diminished clarity or control; or glassy, bloodshot eyes. There was no evidence that he was belligerent, rude, angry, creating a disturbance, behaving in a way to endanger himself or others, or acting in any way out of control. There were no complaints that Mr. Fronk was in any way limited or compromised in performing his job. Accordingly, the Government did not prove beyond a reasonable doubt that Mr. Fronk violated the Regulation by being "under the influence" of alcohol.

3.  *If the Magistrate Judge's interpretation of the Regulation is correct, then does the rule of lenity apply?*

In the alternative, if the Regulation means that not a drop of alcohol is permitted in the body when an individual enters on or in federal property (because one has "used" alcohol and is therefore also "under the influence"), then the rule of lenity applies.[18] When confronted with an ambiguous criminal statute, the "rule of lenity instructs courts to interpret" those statutes "in favor of the accused." *United States v. Serawop*, 505 F.3d 1112, 1121 (10th Cir. 2007). Lenity is appropriate only when congressional purpose is unclear. *See Liparota v. United States*, 471 U.S. 419, 427 (1985). Courts apply the rule of lenity to resolve ambiguities in favor of a defendant when a criminal statutory term is ambiguous and cannot be clarified by the statute's history or structure. *United States v. Metzener*, 584 F.3d 928, 934 (10th Cir. 2009) (quoting *United States v. Booth*, 551 F.3d 535, 541 (6th Cir.2009) (internal citation omitted)). As stated by the Tenth Circuit, "[t]he principle of lenity is founded on two firmly-rooted ideas in this country's tradition: 'First, a fair warning should be given to the world in language that the

---

[18] Defendant argued below that the Regulation is void for vagueness, but during the oral argument on appeal, Defendant argued that the rule of lenity should apply. The Government did not raise any objection to this slight change of argument, and the court agrees that the concept is very similar. While lenity and void-for-vagueness arguments are clearly related, whether the rule of lenity should apply in construing a statute is a pure question of law," while "[a]s-applied vagueness challenges involve a factual dimension in that vagueness is determined 'in light of the facts of the case at hand.'" *United States v. Ochoa–Colchado*, 521 F.3d 1292, 1299 (10th Cir.2008) (quoting *United States v. Bennett*, 329 F.3d 769, 777 (10th Cir.2003)). The court finds that application of the rule of lenity is more appropriately applied here, but, in the alternative, the court also finds that the Regulation is void for vagueness (for all the reasons set forth by Mr. Fronk) if interpreted in the manner the Magistrate Judge interpreted it.

common world will understand, of what the law intends to do if a certain line is passed. . . . .
Second . . . legislatures and not courts should define criminal activity.'" *Wright*, 451 F.3d at 1236
(quoting *United States v. Bass*, 404 U.S. 336, 348 (internal quotations and citations omitted)).

Given the lack of any definitions of material terms, the lack of regulatory history or evidence of GSA's intent regarding this Regulation, and based on the reasons set forth above concerning the uncertainty created by the Magistrate Judge's interpretation of the terms "using" and "under the influence," the court finds that the rule of lenity applies in this case, and the court finds that Mr. Fronk is not guilt of violating this Regulation.

### III. CONCLUSION

For the foregoing reasons, the court REVERSES the Judgment of conviction and finds Mr. Fronk NOT GUILTY of violating 41 C.F.R. §102-74.405.

DATED this 11th day of July, 2014.

                        BY THE COURT:

                        DALE A. KIMBALL
                        United States District Judge